E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4850
    Facsimile: (213) 894-0141
    E-mail:    Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**12/12/2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:23-cr-00618-SVW |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT AKIVA GRUNEWALD |
| v. | |
| AKIVA GRUNEWALD, | |
| Defendant. | |

1.   This constitutes the plea agreement between AKIVA GRUNEWALD ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of defendant's conduct involving the Manzanita Tribal Police Department and his acquisition and possession of firearms.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(2).

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Pay a fine of at least $20,000.

i.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to

2

satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

i.   A Sig Sauer, model P226 handgun bearing serial number 47E015250;

ii.  A Sig Sauer, model P365 handgun bearing serial number 66A095526;

1                    iii. A Smith & Wesson, model M&P 45 handgun bearing

2    serial HYP0052;

3                    iv.  A Smith & Wesson, model M&P 45 handgun bearing

4    serial HDM3047;

5                    v.   A Smith & Wesson, model M&P 45 handgun bearing

6    serial HZN8152;

7                    vi.  A Smith & Wesson, model M&P bodyguard 380 handgun

8    bearing serial KDK5595;

9                    vii. A Sig Sauer, model P365 handgun bearing serial

10   66A095523;

11                   viii.   A FN, model Five-Seven handgun bearing

12   serial 386316935;

13                   ix.  A Radical Firearms, model RF-15 semi-automatic

14   rifle bearing serial RD04191;

15                   x.   A Daniel Defense, model M4 v7 semi-automatic

16   rifle bearing serial number DDM4214820;

17                   xi.  A Smith & Wesson, model Shield handgun bearing

18   serial number HYA2634;

19                   xii. A Glock, model 27 handgun bearing serial number

20   BCTD984;

21                   xiii.   A Glock, model 30SF handgun bearing serial

22   number BFFY467;

23   (collectively, the "Forfeitable Assets").

24           b.   To the Court's entry of an order of forfeiture at or

25   before sentencing with respect to the Forfeitable Assets and to the

26   forfeiture of the assets.

27           c.   To take whatever steps are necessary to pass to the

28   United States clear title to the Forfeitable Assets, including,

                                        4

without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.  Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A) and/or requirements of the Government to commence forfeiture actions pursuant to 18 U.S.C. § 924(d)(1).

e.  Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.  Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.  To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.  To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.  That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

1      THE USAO'S OBLIGATIONS

2      4.   The USAO agrees to:

3           a.   Not contest the Factual Basis agreed to in this

4 agreement.

5           b.   Abide by all agreements regarding sentencing contained

6 in this agreement.

7           c.   At the time of sentencing, provided that defendant

8 demonstrates an acceptance of responsibility for the offense up to

9 and including the time of sentencing, recommend a two-level reduction

10 in the applicable Sentencing Guidelines offense level, pursuant to

11 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

12 additional one-level reduction if available under that section.

13          d.   Recommend a sentence of probation.

14          e.   Except for criminal tax violations (including

15 conspiracy to commit such violations chargeable under 18 U.S.C.

16 § 371), not further criminally prosecute defendant for violations of

17 18 U.S.C. §§ 922(a)(6) (false statements in acquiring a firearm or

18 ammunition) and 922(g)(5) (prohibited person in possession of a

19 firearm or ammunition) arising out of defendant's conduct described

20 in the agreed-to Factual Basis set forth in paragraph 10 below.

21 Defendant understands that the USAO is free to criminally prosecute

22 defendant for any other unlawful past conduct or any unlawful conduct

23 that occurs after the date of this agreement.  Defendant agrees that

24 at the time of sentencing the Court may consider the uncharged

25 conduct in determining the applicable Sentencing Guidelines range,

26 the propriety and extent of any departure from that range, and the

27 sentence to be imposed after consideration of the Sentencing

28 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

6

1

<u>NATURE OF THE OFFENSE</u>

2       5.   Defendant understands that for defendant to be guilty of
3  the crime charged in the single-count information, that is, that is,
4  Bribery Concerning Programs Receiving Federal Funds, in violation of
5  18 U.S.C. § 666(a)(2), the following must be true: (1) Chief A was an
6  agent of an Indian tribal government, or any agency of that
7  government; (2) the Indian tribal government received, in any one-
8  year period, benefits in excess of $10,000 under a Federal program
9  involving a grant, contract, subsidy, loan, guarantee, insurance, or
10 other form of Federal assistance; (3) defendant gave, offered, or
11 agreed to give anything of value to Chief A; and (4) defendant acted
12 corruptly, that is, with the intent to influence or reward Chief A in
13 connection with any business, transaction, or series of transactions
14 of the Indian tribal government involving anything of value of $5,000
15 or more.

16

<u>PENALTIES</u>

17      6.   Defendant understands that the statutory maximum sentence
18 that the Court can impose for a violation of 18 U.S.C. § 666(a)(2),
19 is: 10 years of imprisonment; a 3-year period of supervised release;
20 a fine of $250,000 or twice the gross gain or gross loss resulting
21 from the offense, whichever is greatest; and a mandatory special
22 assessment of $100.

23      7.   Defendant understands that supervised release is a period
24 of time following imprisonment during which defendant will be subject
25 to various restrictions and requirements.  Defendant understands that
26 if defendant violates one or more of the conditions of any supervised
27 release imposed, defendant may be returned to prison for all or part
28 of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

The allegations of the attached Information are incorporated herein by reference and admitted as true.

On or about July 31, 2018, in Los Angeles County, within the Central District of California, defendant corruptly gave $20,000 to Chief A, the Chief of Police for the Manzanita Tribal Police Department ("Manzanita PD"), intending to influence Chief A in connection with business, transactions, and a series of transactions of the Manzanita Band of Kumeyaay Nation having a value of $5,000 or more, namely, the issuance of a badge and credentials reflecting membership in the Manzanita PD.  At the time of the payment, Chief A was an agent of the Manzanita Band of Kumeyaay Nation, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, or other form of Federal assistance during the one-year period from January 2018 to January 2019.

1    Specifically, earlier in 2018, defendant, then a resident of Los
2    Angeles County, learned of an opportunity to obtain law enforcement
3    credentials with a tribal police department located approximately 177
4    miles away in San Diego County.  At the time, defendant had never
5    served as a law enforcement officer and had never undergone any
6    training to become a law enforcement officer.  Defendant also had no
7    prior military experience or experience as a private security
8    officer.  Defendant was interested in obtaining law enforcement
9    credentials because of his belief that it would allow him to conceal-
10   carry firearms in California, which otherwise required the issuance
11   of a special permit that defendant believed was difficult to obtain.
12       On July 31, 2018, defendant arrived at the designated meeting
13   location, a car and limousine service company in El Segundo,
14   California, to meet with Chief A, who at the time was Chief of the
15   Manzanita PD.  Using a check from a business with which defendant was
16   affiliated, defendant provided Chief A with a check for $20,000
17   written directly to Chief A.  Defendant then received a badge and
18   credentials that indicated he was a police officer for the Manzanita
19   PD, without having gone through any law enforcement training to
20   qualify him to be a police officer.  At the time he provided the
21   check to Chief A in exchange for the law enforcement credentials,
22   defendant understood that he would not receive the law enforcement
23   credentials unless he made the payment to Chief A.  Defendant made
24   the $20,000 payment intending to influence Chief A in connection with
25   Chief A using his official position to issue defendant a Manzanita PD
26   tribal law enforcement badge and credentials.  After receiving his
27   Manzanita PD law enforcement badge and credentials, defendant used
28   such credentials to conceal carry firearms, to acquire and possess

firearms while in Los Angeles County and elsewhere, and to apply for and receive confidential driver's license status with the California Department of Motor Vehicles.

On or about August 31, 2018, in Los Angeles County, defendant, who was then an unlawful user of and addicted to a controlled substance as defined in 21 U.S.C. § 802, namely, oxycodone and other narcotics, knowingly possessed firearms and ammunition, in and affecting interstate and foreign commerce. Specifically, on August 31, 2018, the Culver City Police Department ("Culver PD") stopped defendant after he ran across a busy street and entered a black Range Rover that was missing the front license plate and had tinted windows. The rear license plate read, "EMBLEM," which Culver PD dispatch indicated belonged to a 2017 Infiniti Sedan. During the resulting traffic stop, defendant displayed his Manzanita PD badge out of his window and identified himself as a police officer to the responding officer. Defendant was shaking visibly, sweating, and appeared extremely nervous.

Defendant told the responding officer that he was carrying a firearm on his right hip, and he was asked to exit the vehicle. Culver PD then recovered from defendant's person a Sig Sauer P365 with 12 rounds loaded in its magazine. From defendant's coin pocket, officers recovered 43 ½ loose pills in a small wrapper, which later tested positive for oxycodone. Defendant also possessed in his car a Sig Sauer P226 loaded with 15 rounds in the magazine, a police gun belt with handcuffs, a collapsible baton, pepper spray, two additional 15-round magazines loaded with 15 rounds of ammunition each, and a tactical vest adorned with Manzanita PD soft badges.

1  Both the Sig Sauer P365 and the Sig Sauer P226 had been acquired in

2  Florida before they were found in California.

3      In addition to defendant's Manzanita PD credentials, defendant

4  possessed numerous other badges and credentials associated with other

5  law enforcement agencies, including a "National Law Enforcement

6  Officers" badge #552, a "City of Peekskill Police Clergy" badge, a

7  "National Police Federation" badge #157, a "City of Peekskill Police

8  Chaplain" badge #522, numerous blank metal "Fraternal Order of

9  Police" identification badges, a "Federal Law Enforcement

10 Association" identification card #174528, and a "Westchester County

11 Police" identification card, among others.  In his home, as

12 discovered by law enforcement later that day, defendant possessed

13 three additional firearms and multiple additional rounds of

14 ammunition.

15     After defendant's arrest by Culver City PD in August 2018, which

16 resulted in the seizure of his Manzanita PD badges and credentials,

17 defendant asked for and received from Chief A a new set of Manzanita

18 PD badges and credentials.  Defendant then used these new credentials

19 to purchase three firearms from a Burbank-based business (hereinafter

20 "Business 1") and a fourth firearm from a Culver City-based business

21 (hereinafter "Business 2").

22     Specifically, on or about November 23, 2018, defendant purchased

23 a Glock 27 handgun from Business 1.  In connection with the purchase

24 of the Glock 27, defendant falsely represented on ATF Form 4473 that

25 he was not an unlawful user of, or addicted to, marijuana or any

26 depressant, stimulant, narcotic drug, or any other controlled

27 substance, when in truth and in fact, as defendant then knew, he was

28 an unlawful user of and addicted to oxycodone.  Defendant also

12

falsely claimed to Business 1 that he was exempted from the Firearm Safety Certificate requirement due to his purported employment as an active peace officer in California and provided Business 1 a copy of his Manzanita PD identification card in connection with his application to purchase the firearm.

On or about January 2, 2019, defendant purchased a Glock 30SF 45 caliber semi-automatic pistol from Business 2.  In connection with the purchase of the Glock 30SF, defendant falsely represented on ATF Form 4473 that he was not an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance, when in truth and in fact, as defendant then knew, he was an unlawful user of and addicted to oxycodone.

On or about April 7, 2019, defendant purchased a Smith & Wesson Shield handgun and a Daniel Defense M4 semi-automatic rifle from Business 1.  In connection with the purchase of these firearms, defendant again falsely represented on ATF Form 4473 that he was not an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance, when in truth and in fact he was.  Defendant again falsely claimed to Business 1 that he was exempted from the Firearm Safety Certificate requirement due to his purported employment as an active peace officer in California.  The Smith & Wesson handgun defendant acquired using his Manzanita PD credential was an off-roster firearm, which meant that it was available for purchase in California only by certain law enforcement officers.  Defendant again provided Business 1 with a copy of his Manzanita PD identification car in connection with his application to purchase this firearm.

13

On or about May 9, 2019, in Los Angeles County, defendant again knowingly possessed firearms and ammunition, in and affecting interstate and foreign commerce, while then being an unlawful user of and addicted to a controlled substance as defined in Title 21, United States Code, Section 802, namely, oxycodone and other narcotics. Specifically, defendant was arrested by the Los Angeles Police Department ("LAPD") following multiple 911 calls reporting indecent exposure at a gas station.  One of the callers reported an intoxicated individual, later identified as defendant, in a black Range Rover with no plates, who had removed all of his clothing and was hitting himself.  When the officers arrived, defendant was seated outside a gas station by the gas pumps with no shirt on and with his pants and underwear down to his ankles.  An employee of the gas station advised that he called the police because he felt unsafe after seeing defendant sitting outside by the gas pump with his pants down and no shirt while smacking himself and yelling.

When the officers took defendant into custody, he was sweating profusely and told the officers he had taken Percocet and Ambien. Defendant again identified himself as a police officer, and during a search of defendant's person, the officers found two Manzanita "Police Officer" badges with different numbers, two Manzanita PD identification cards, and other identification cards affiliated with law enforcement organizations or organizations supportive of law enforcement.  At the time, defendant possessed in the trunk of his car the four firearms he had acquired from Business 1 and Business 2, including the Daniel Defense M4 semi-automatic rifle, along with several magazines and over 200 rounds of ammunition.

1

SENTENCING FACTORS

2      11.  Defendant understands that in determining defendant's

3  sentence the Court is required to calculate the applicable Sentencing

4  Guidelines range and to consider that range, possible departures

5  under the Sentencing Guidelines, and the other sentencing factors set

6  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7  Sentencing Guidelines are advisory only, that defendant cannot have

8  any expectation of receiving a sentence within the calculated

9  Sentencing Guidelines range, and that after considering the

10  Sentencing Guidelines and the other § 3553(a) factors, the Court will

11  be free to exercise its discretion to impose any sentence it finds

12  appropriate up to the maximum set by statute for the crime of

13  conviction.

14      12.  Defendant and the USAO agree to the following applicable

15  Sentencing Guidelines factors:

16    Base Offense Level:            12        U.S.S.G. § 2C1.1(a)(2)

17    Value More than $15,000        +4        U.S.S.G. §§ 2C1.1(b)(2),

18                                              2B1.1(b)

19  Defendant and the USAO reserve the right to argue that additional

20  specific offense characteristics, adjustments, and departures under

21  the Sentencing Guidelines are appropriate.

22      13.  Defendant understands that there is no agreement as to

23  defendant's criminal history or criminal history category.

24      14.  Defendant and the USAO reserve the right to argue for a

25  sentence outside the sentencing range established by the Sentencing

26  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

27  (a)(2), (a)(3), (a)(6), and (a)(7).

28

15

1        WAIVER OF CONSTITUTIONAL RIGHTS AND STATUTE OF LIMITATIONS

2        15.   Defendant understands that by pleading guilty, defendant

3   gives up the following rights:

4            a.   The right to persist in a plea of not guilty.

5            b.   The right to a speedy and public trial by jury.

6            c.   The right to be represented by counsel -- and if

7   necessary have the Court appoint counsel -- at trial.  Defendant

8   understands, however, that, defendant retains the right to be

9   represented by counsel -- and if necessary have the Court appoint

10  counsel -- at every other stage of the proceeding.

11           d.   The right to be presumed innocent and to have the

12  burden of proof placed on the government to prove defendant guilty

13  beyond a reasonable doubt.

14           e.   The right to confront and cross-examine witnesses

15  against defendant.

16           f.   The right to testify and to present evidence in

17  opposition to the charges, including the right to compel the

18  attendance of witnesses to testify.

19           g.   The right not to be compelled to testify, and, if

20  defendant chose not to testify or present evidence, to have that

21  choice not be used against defendant.

22           h.   Any and all rights to pursue any affirmative defenses,

23  Fourth Amendment or Fifth Amendment claims, and other pretrial

24  motions that have been filed or could be filed.

25           i.   Having been fully advised by defendant's attorney

26  regarding application of the statute of limitations to the offense to

27  which defendant is pleading guilty, defendant hereby knowingly,

28  voluntarily, and intelligently waives, relinquishes, and gives up:

16

(a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

## WAIVER OF APPEAL OF CONVICTION

16. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17. Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 13 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided

it is within the statutory maximum; (e) the amount and terms of any fine payment, provided it requires payment of no more than $20,000; (f) the amount and terms of any restitution order; (g) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (h) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. The USAO agrees that, provided (a) all portions of the sentence are below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 13 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of the fine ordered if that amount is less than $20,000.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

19. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this

1  agreement and the filing commencing any such action; and

2  (ii) defendant waives and gives up all defenses based on the statute

3  of limitations, any claim of pre-indictment delay, or any speedy

4  trial claim with respect to any such action, except to the extent

5  that such defenses existed as of the date of defendant's signing this

6  agreement.

7                        RESULT OF VACATUR

8       20.  Defendant agrees that if the count of conviction is

9  vacated, reversed, or set aside, both the USAO and defendant will be

10  released from all their obligations under this agreement.

11                    EFFECTIVE DATE OF AGREEMENT

12       21.  This agreement is effective upon signature and execution of

13  all required certifications by defendant, defendant's counsel, and an

14  Assistant United States Attorney.

15                        BREACH OF AGREEMENT

16       22.  Defendant agrees that if defendant, at any time after the

17  signature of this agreement and execution of all required

18  certifications by defendant, defendant's counsel, and an Assistant

19  United States Attorney, knowingly violates or fails to perform any of

20  defendant's obligations under this agreement ("a breach"), the USAO

21  may declare this agreement breached.  All of defendant's obligations

22  are material, a single breach of this agreement is sufficient for the

23  USAO to declare a breach, and defendant shall not be deemed to have

24  cured a breach without the express agreement of the USAO in writing.

25  If the USAO declares this agreement breached, and the Court finds

26  such a breach to have occurred, then: (a) if defendant has previously

27  entered a guilty plea pursuant to this agreement, defendant will not

28

be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant

21

1   understands that no one -- not the prosecutor, defendant's attorney,

2   or the Court -- can make a binding prediction or promise regarding

3   the sentence defendant will receive, except that it will be within

4   the statutory maximum.

5                          NO ADDITIONAL AGREEMENTS

6        27.  Defendant understands that, except as set forth herein,

7   there are no promises, understandings, or agreements between the USAO

8   and defendant or defendant's attorney, and that no additional

9   promise, understanding, or agreement may be entered into unless in a

10  writing signed by all parties or on the record in court.

11             PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

12       28.  The parties agree that this agreement will be considered

13  part of the record of defendant's guilty plea hearing as if the

14  entire agreement had been read into the record of the proceeding.

15  AGREED AND ACCEPTED

16  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
17  CALIFORNIA

18  E. MARTIN ESTRADA
    United States Attorney

19

20  _____          12/8/2023
    FRANCES S. LEWIS                         _____
21  Assistant United States Attorney          Date

22  _____          12/08/2023
    AKIVA GRUNEWALD                          _____
23  Defendant                                 Date

24  _____          12/08/2023
    SAMUEL LONG                              Date
25  Attorney for Defendant AKIVA
    GRUNEWALD

26

27

28

                                  22

1               CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19  _____          12/08/2023
                                              _____
20  AKIVA GRUNEWALD                           Date
    Defendant

21

22

23

24

25

26

27

28

1          CERTIFICATION OF DEFENDANT'S ATTORNEY

2          I am AKIVA GRUNEWALD's attorney.  I have carefully and

3    thoroughly discussed every part of this agreement with my client.

4    Further, I have fully advised my client of his rights, of possible

5    pretrial motions that might be filed, of possible defenses that might

6    be asserted either prior to or at trial, of the sentencing factors

7    set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the Factual Basis set

14   forth in this agreement is sufficient to support my client's entry of

15   a guilty plea pursuant to this agreement.

16

17   _____          12/08/2023
     SAMUEL LONG                              Date
18   Attorney for Defendant AKIVA
     GRUNEWALD

19

20

21

22

23

24

25

26

27

28

                                24

Exhibit A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 666(a)(2): Bribery Concerning Programs Receiving Federal Funds] |
| AKIVA GRUNEWALD, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 666(a)(2)]

At times relevant to this Information:

A.    THE MANZANITA BAND OF THE KUMEYAAY NATION

1.    The Manzanita Band of the Kumeyaay Nation was a federally recognized tribe ("Manzanita Tribe").

2.    The reservation for the Manzanita Tribe ("Manzanita Reservation") was located in southeastern San Diego County, California.

3.    The Manzanita Tribe received federal assistance in excess of $10,000 for each of the calendar years 2017, 2018, and 2019 in the form of federal grants from the U.S. Department of Interior, Bureau of Indian Affairs, Office of Self Governance.

1     4.   In 2012, Chief A, who was not a member of the Manzanita

2   Tribe, founded the Manzanita Tribal Police Department ("Manzanita

3   PD"), and thereafter served as its Chief of Police until 2018, when

4   he stepped down in title only.

5     5.   In February 2020, the Manzanita Tribe terminated the

6   Manzanita PD and its relationship with Chief A.

7   B.   THE BADGES-FOR-MONEY SCHEME

8     6.   Beginning in or around 2016, Chief A and other members of

9   the Manzanita PD ("recruiters") began to solicit wealthy individuals

10  in the Los Angeles area to become members of the Manzanita PD,

11  including defendant AKIVA GRUNEWALD.  Defendant GRUNEWALD had no law

12  enforcement experience before joining the Manzanita PD.  Chief A and

13  other recruiters would refer to these wealthy individuals as the "VIP

14  Group," the "ghostriders," or the "Admin Bureau."  Typically, these

15  individuals were asked to make a large payment, ranging from $5,000

16  to $100,000, and sometimes styled as a "donation," in exchange for

17  membership in the Manzanita PD.  The individuals who made the

18  payments, including defendant GRUNEWALD, believed that a Manzanita PD

19  badge could grant the holder privileges in connection with the

20  purchase and carrying of firearms, including the ability to carry

21  concealed firearms in California and elsewhere.

22     7.   Members of the VIP Group were not expected to perform any

23  law enforcement services for the Manzanita PD and many never visited

24  the Manzanita Reservation at all.  To further conceal the scheme,

25  Chief A and other recruiters sometimes would ask the VIP Group to

26  enroll in California POST programs.

27     8.   Chief A set up an office space for the Manzanita PD in an

28  office building in El Segundo, California, in Los Angeles County,

within the Central District of California, which was approximately 177 miles and a several hour drive to the Manzanita Reservation in San Diego County.  The office space was located inside the space used by a limousine and car service company.  Neither the office space nor the limousine and car service company had any affiliation with or relationship to the Manzanita Tribe.

9.    At no time was any member of the Manzanita PD also a member of the Manzanita Tribe.  At no time was the Manzanita PD recognized by the Bureau of Indian Affairs ("BIA") or the State of California as a cross-deputized police department with federal or state law enforcement authority.  At no time did members of the Manzanita PD have the authority to identify themselves either as federal law enforcement officers, state law enforcement officers, or peace officers, and at no time did the Manzanita PD have the authority to engage in any law enforcement activities off the Manzanita Reservation.

10.    Chief A and others issued badges and credentials reflecting membership to the Manzanita PD, including defendant GRUNEWALD.  Most members of the Manzanita PD, including defendant GRUNEWALD, lived in the Los Angeles area, hours away from the Manzanita Reservation. While off the Manzanita Reservation, many persons who purchased Manzanita PD memberships, including defendant GRUNEWALD, sought to avail themselves of privileges available to federal and state law enforcement officers, including using Manzanita PD credentials to acquire firearms and carry concealed firearms.

//

//

C.   DEFENDANT'S PAYMENT FOR A BADGE

     11.  On or about July 31, 2018, in Los Angeles County, within the Central District of California, defendant AKIVA GRUNEWALD ("GRUNEWALD") corruptly gave, offered, and agreed to give something of value to Chief A, the Chief of Police for the Manzanita Tribal Police Department and an agent of the Manzanita Band of Kumeyaay Nation, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance during the one-year period from January 2018 to January 2019, intending to influence and reward Chief A in connection with a business, transaction, and series of transactions of the Manzanita Band of Kumeyaay Nation having a value of $5,000 or more.  Specifically, defendant GRUNEWALD corruptly gave, offered, and agreed to give to Chief A $20,000 via a personal check written to Chief A, intending to influence and reward Chief A

//

//

1   in connection with Chief A using his official position to issue a

2   tribal law enforcement badge and credentials to defendant GRUNEWALD.

3

4                                        E. MARTIN ESTRADA
                                         United States Attorney
5

6

7                                        MACK E. JENKINS
                                         Assistant United States Attorney
8                                        Chief, Criminal Division

9                                        LINDSEY GREER DOTSON
                                         Assistant United States Attorney
10                                       Chief, Public Corruption and
                                         Civil Rights Section
11
                                         CASSIE D. PALMER
12                                       Assistant United States Attorney
                                         Deputy Chief, Public Corruption
13                                       and Civil Rights Section

14                                       FRANCES S. LEWIS
                                         Assistant United States Attorney
15                                       Public Corruption and Civil
                                         Rights Section
16

17

18

19

20

21

22

23

24

25

26

27

28